[No. B081118. Second Dist., Div. Four. Sept. 19, 1995.]

In re the Marriage of LESLIE E. and PATRICIA M. EDWARDS.
LESLIE E. EDWARDS, Respondent, v.
PATRICIA M. EDWARDS, Appellant.

**COUNSEL**

George Magit for Appellant.

Willard M. Reisz for Respondent.

**OPINION**

**VOGEL (C. S.), J.—**

### INTRODUCTION

Appellant Patricia M. Edwards (Wife) appeals from an order after a hearing on her order to show cause seeking enforcement orders against respondent Leslie E. Edwards (Husband) arising from their 1981 marital dissolution judgment.

Wife sought orders to enforce a provision of that judgment which stated each party would maintain a will giving one-half their net estate to the parties' two adult children. Wife sought orders compelling disclosure of assets Husband held in joint tenancy and of the beneficiaries of Husband's "IRA accounts," a determination by the court whether Husband was "in compliance," and if not, orders requiring Husband to execute documents, and orders restraining transfers of property.

The trial court examined, in camera, various documents supplied by Husband and opined that Husband was "apparently in compliance," but otherwise denied any enforcement orders.

Wife appeals, contending the trial court should have done more. We affirm, concluding the trial court did more than was required.

### FACTUAL AND PROCEDURAL BACKGROUND

Following a 27-year marriage the parties divorced in 1981, having 2 adult children. The 1981 judgment of dissolution was based on their marital settlement agreement.

Paragraph 8 of the dissolution judgment provided: "*Inheritance.* Each party shall maintain in effect until his death, a will, codicil, trust, or amendment to trust, as appropriate, containing a provision that one-half of the party's net estate shall be distributed in equal shares to or for the benefit of the parties' children living at the death of the party, and if a child shall have predeceased the party leaving children then surviving, the share of the deceased child shall be distributed to or held in trust for the benefit of the living children of the deceased child. The court finds that each party has represented that he has furnished to the other a true and correct copy of the written instrument required hereunder."

In 1992, in connection with a motion by Husband for reduction of spousal support, Husband, who had remarried, filed a statement of his assets. This

statement indicated that he had IRA accounts worth $1,045,930, and a home and automobile held in joint tenancy with his second wife. Wife's counsel sought disclosure of the beneficiaries of the IRA accounts, which Husband and his counsel refused to provide.

Speculating that Husband might have named his second wife as beneficiary of the IRA accounts and that, if so, this might prevent one-half his "net estate" going to their children upon his death, Wife in January 1993 filed an order to show cause "[t]o compel [e]nforcement of Par. 8 of the Judgment of Dissolution." Under "Other relief" she requested, "Orders requiring [Husband's] performance of Paragraph 8 of the Judgment of Dissolution, including satisfactory proof that [Husband] is in compliance by providing for the disposition of one-half of his net assets on his death in accordance with the Judgment; and if not, that [Husband] shall promptly execute such documents as may be required disposing of his property at his death as stated, and; further restraining the transfer or alienation of his assets in violation of the terms of the Judgment; and such other orders that may be required to carry out the executory provision of said Paragraph 8 of the Judgment."

In connection with her order to show cause, Wife scheduled Husband's deposition and requested production of "[a]ll documents and writings showing how and in what way [Husband] has provided for the disposition of his property at his death including, but not limited to, [Husband's] Will, Trust Agreements, Deeds and documents showing the beneficiaries of his IRA Accounts, whether held by himself, banks or other financial institutions." Husband's counsel notified Wife's counsel that the requested documents would not be disclosed, nor would Husband address them at his deposition, on the grounds the request was irrelevant to any proper purpose, was an attempt to rewrite the marital settlement agreement and was an invasion of privacy. Wife filed motions to compel answers and production of documents, and Husband filed opposition. The motions to compel answers and production of documents were heard in March 1993, prior to the hearing on the order to show cause. The trial court suggested a solution that the court review the requested documents in camera with Husband's attorney and then make a pronouncement whether Husband was in compliance. It was agreed Husband would bring the documents to the April 1993 hearing on the order to show cause.

At the April hearing, the parties orally argued the merits of the order to show cause. Although Husband brought the requested documents for the court's inspection, Husband objected to the order to show cause. Husband argued that the order to show cause was premature because Wife was asserting issues which were not ripe for decision until Husband's death and

that the prior judgment and marital settlement agreement made no provision for continuing disclosures, enforcement during life, or a periodic audit as suggested by Wife. The trial court likewise expressed its concern that "a will operates at the time of death, and until somebody dies, isn't all this academic?" and that Wife's issues need not be decided "at this juncture" because only after Husband's death "will we be in a position to determine whether or not [Husband] is in compliance." The court also expressed its concern, along lines suggested by Husband, that mere inspection of the documents would not give the court sufficient information to decide the merits of whether Husband was "in compliance," because actuarial, appraisal or expert opinion evidence might be needed.

Nevertheless, the court then recessed for an in camera session with Husband's counsel for inspection of documents. Back on the record, the court announced that based on its inspection of "various and sundry" documents it seemed to the court's "untrained [in probate] eye," Husband "is probably in compliance, under the terms of the trust, and the IRA agreements." The court then stated it was willing to go no further. The court said it would not make a finding whether paragraph 8 was enforceable "at this time" and denied Wife's requests for any further orders for compliance.

## DISCUSSION

We conclude the trial court was correct in its intuition that the relief requested by Wife is inappropriate during Husband's lifetime. The trial court's order correctly denied enforcement orders. To the extent the trial court nevertheless examined documents in camera and opined cautiously that Husband presently appears to be in compliance, the court's finding was surplusage for whatever it may be worth to reassure Wife.

Although a contract to make a will may be valid (Prob. Code, § 150), it ordinarily cannot be enforced until after the promisor's death, by imposing a constructive trust on property which the promisor left to others in violation of the contract, a remedy known as quasi-specific performance. (*Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415]; *Goldstein* v. *Hoffman* (1963) 213 Cal.App.2d 803, 812 [29 Cal.Rptr. 334].) A contract to make a will cannot be specifically enforced during the promisor's lifetime, for several reasons. A court cannot compel a person to make a will (*Ludwicki* v. *Guerin, supra*), and a person has the raw power to amend or revoke a will prior to death, even though contrary to agreement. (*Goldstein* v. *Hoffman, supra.*) Because the promisor has all of his lifetime to comply with the agreement, ordinarily no breach occurs until death, at which time a cause of action first accrues. (*Ludwicki* v. *Guerin, supra*, 57 Cal.2d at p. 130

& fn. 2; *Goldstein* v. *Hoffman, supra,* 213 Cal.App.2d at p. 812; Annot. (1949) 7 A.L.R.2d 1166, 1169.) The promisor has, during lifetime, the right to use his property for his own support or to dispose of it, if not done in bad faith for the purpose of defeating the contract. (*Westbrook* v. *Superior Court* (1986) 176 Cal.App.3d 703, 712 [222 Cal.Rptr. 317].) If the promise does not involve specific property but rather such property as the promisor owns at the time of death, the property to which the promisee has a claim cannot be identified until death. (*Ibid.*)

 Here, the trial court's comments show the court's understanding that the relief sought by Wife was premature. Husband's agreement did not involve specific property. Until Husband's death, there is no way of knowing what his "net estate" will be, and as suggested to the trial court by Husband's counsel, any attempt to speculate whether Husband's present testamentary disposition will result in one-half his net estate going to the children is fraught with complexities that need not be addressed now. Wife did not allege or show Husband had made bad faith inter vivos transfers for the purpose of defrauding the beneficiaries so as to justify a constructive trust or injunctive relief during his lifetime. (Compare with cases distinguished in *Westbrook* v. *Superior Court, supra,* 176 Cal.App.3d at pp. 711-715.)

The fact that Husband's agreement was incorporated into the 1981 marital dissolution judgment does not give Wife any greater right to relief. Former Civil Code section 4380, now Family Code section 290, authorizes only such enforcement methods as the court in its discretion determines necessary. The marital settlement agreement did not expressly forbid disposal of certain properties, require subsequent disclosures, authorize periodic audits, monitoring by the court or a third party, or court orders compelling execution of a will. In *Mitchell* v. *Marklund* (1965) 238 Cal.App.2d 398, 400 [47 Cal.Rptr. 756], as here, the parents as part of their marital settlement agreement provided that each intended all the property they held at death to go to their children equally, and agreed to execute irrevocable wills including such provisions. The husband remarried and subsequently died with a will leaving his property to his second wife, to the exclusion of the children. The trial court denied imposition of a constructive trust on various grounds, including lack of consideration and the prior repudiation of the agreement by the first wife. The children argued on appeal that these defenses were inapplicable because the agreement was incorporated into the dissolution judgment. The court rejected that argument, saying, "[t]he agreement to make wills cannot acquire the status of a judgment by the physical incorporation of the property settlement agreement in which it is embodied into the interlocutory decree of divorce for the reason that it is beyond the power of a court, sitting as a divorce court, to make. . . . [N]o court may compel the making of a will . . . ." (*Id.* at pp. 403-404.)

In light of our conclusion that no grounds were shown for specifically enforcing paragraph 8 of the marital dissolution judgment at this time, the trial court's order denying Wife's order to show cause and declining to make enforcement orders or to interpret the agreement's language reached the correct result and should therefore be affirmed. (*Westbrook* v. *Superior Court*, *supra*, 176 Cal.App.3d at p. 710.)

### DISPOSITION

The order is affirmed.

Woods (A. M.), P. J., and Hastings, J., concurred.