[No. B193031. Second Dist., Div. Eight. Jan. 23, 2008.]

In re the Marriage of JEFFREY W. and MARTHA ROTHROCK.
MARTHA ROTHROCK, Appellant, v.
JEFFREY W. ROTHROCK, Respondent.

**COUNSEL**

Law Office of Robert W. Scott and Robert W. Scott for Appellant.

Angelo & White, Joseph Angelo and Nicole R. Combs for Respondent.

**OPINION**

**FLIER, J.**—Martha Rothrock (Martha) appeals from an order of the trial court modifying child support payments by her former spouse, Jeffrey W.

Rothrock (Jeffrey),[1] and directing her to pay one-half of their minor children's uninsured health care costs. Martha further appeals from a posttrial order denying her motion to vacate the modification order and denying her attorney fees as sanctions. We affirm.

## FACTS AND PROCEDURAL HISTORY

Martha and Jeffrey married in September 1983 and separated in August 1992. As of the orders in issue, they had one minor child, Jeffrey C. (Jeffrey, Jr.), who was about to graduate from high school, and two adult children.

In October 1992, Jeffrey filed a petition for dissolution of marriage in the Superior Court of Riverside County. The parties entered into a marital settlement agreement drafted by Martha's attorney and approved in writing by both parties and their counsel. The Riverside County Superior Court entered a judgment of dissolution incorporating that agreement in August 1993.

In the marital settlement agreement, the parties stipulated that "[Jeffrey] presently receives non taxable monthly income from a personal injury structured settlement in the form of an insurance annuity which pays him $1700.00 per month for life with 20 years guaranteed . . . ." The parties agreed Jeffrey would receive, as his sole and separate property, the "[p]ersonal injury settlement proceeds to be received after the date of execution . . . based on monthly annuity payments of $1,700.00 per month payable to [Jeffrey] for life beginning August 1, 1990 with 20 years guaranteed."[2] Under the agreement, Jeffrey agreed to pay child support of $300 per month for the oldest child, $400 per month for the next oldest child and $500 per month for the youngest child, a total of $1,200 per month, until the child "reaches 19, or reaches 18 [and] is not a full-time high school student residing with a parent." The parties further arranged that "[c]hild support shall be made by assignment of the monthly personal injury settlement being received by [Jeffrey]." The parties consented to share equally any "medical, dental, orthodontia or other health care expenses not covered by insurance" for the minor children.

The case subsequently was transferred to Los Angeles County.

In November 2004, the court ordered child support of $1,100 per month, $550 each for the then remaining minor children, Ryan and Jeffrey, Jr. Later,

---

[1] As is customary in family law proceedings, we refer to the parties by their first names for purposes of clarity and meaning no disrespect. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].)

[2] The parties agreed Martha would receive as her separate property a contingent beneficiary interest in the personal injury settlement proceeds, "to be effective only upon the death of Respondent [*sic*]."

in January 2005, the court found Jeffrey was in arrears by $2,762 and reserved jurisdiction over the issue of medical bills.

In June 2005, Jeffrey filed an order to show cause seeking modification of child support, reimbursement of uninsured medical expenses, and attorney fees. Jeffrey asked that support for Ryan be terminated since Ryan had reached age 18, had graduated from high school and was no longer living with his mother. Jeffrey also requested a guideline support order for Jeffrey, Jr., stating he (Jeffrey) was currently unemployed and Martha was earning $2,400 per month. Jeffrey stated he had paid uninsured health care expenses for their minor sons.

Martha responded and claimed Jeffrey was in arrears on his child support and other payments. She contended she had "inadvertently" agreed to receive child support by assignment of the personal injury settlement and that the personal injury settlement was a community asset to be divided. Martha objected to the uninsured health care expenses arguing that cosmetic expenses such as orthodontia were not covered in the settlement.

A hearing of Jeffrey's order to show cause took place on March 9, 2006. On that date, the court set the matter for trial on May 17, 2006, and drew the attention of both parties and their counsel to a recently decided case, *In re Marriage of Heiner*, stating it "might have some impact on the issue of the personal injury annuity." (See *In re Marriage of Heiner* (2006) 136 Cal.App.4th 1514 [39 Cal.Rptr.3d 730] (*Heiner*).) The court observed *Heiner* held a lump-sum personal injury settlement is not considered income for purposes of child support. Although the court indicated it was uncertain if *Heiner* applied to an annuity, it informed the parties the court would hear arguments on the issue when the parties returned for trial.

On May 15, 2006, Jeffrey submitted a supplemental memorandum of points and authorities asserting on the basis of *Heiner* that his personal injury settlement annuity was not income for purposes of child support and should not be considered in the guideline calculation. Jeffrey stated that he suffers from impaired brain function and intense pain in his back and extremities for which he needs physical therapy and medication. He asserted it would be unjust and inappropriate to force him to use the annuity payments for child support "when they are needed and intended to pay for [his] ongoing medical treatment."

Trial commenced on May 17, 2006. Martha had discharged her attorney in late April 2006, and she appeared in propria persona at the trial. At the outset, the court indicated it had spent a "considerable amount of time going through

the files" and was therefore familiar with the case. The court inquired of the parties if they were ready to proceed, and both parties answered "Yes."

Jeffrey's counsel asked to make an offer of proof, given that Martha was now acting in propria persona, to simplify and shorten the trial. At that point, the court said, "Let me tell you what my take is first, and then you can tell me what additional issues you think may need to be addressed."

The court stated it found under *Heiner* that "personal injury recovery that is undifferentiated and unallocated as to any particular component is not income . . . for the purpose of calculating child support." It further indicated it found, based on the information contained in the court file, "any attempt [on the part of the court] to allocate the personal injury settlement annuity among the various components of most personal injury settlement[, i.e.,] pain and suffering, loss of earnings, past and future, and . . . past medical specials, future medical specials, or other compensatory damage[,] would be pure speculation on [the court's] part, if [it] tried to break down this personal injury settlement." The court therefore stated it would not consider personal injury annuity as income for the purpose of establishing child support under *Heiner.*

Among other things, the court found the parties had expressly agreed in their marital settlement agreement, which had been incorporated into the judgment, that Jeffrey would be awarded the personal injury settlement annuity. The court also found that the judgment had expressly ordered both parties to share equally in any uninsured health care expense for the minor children, including dental, medical and orthodontia care. The court had ordered Jeffrey to pay $1,100 in monthly child support, $550 each for two minor children, in November and December 2004. In January 2005, the court had established arrearages of $2,762 and further reserved jurisdiction over the issue of medical bills.

On the basis of these findings, the trial court ordered that child support for Ryan should be terminated as of his reaching 18 and graduating from high school, i.e., the end of June 2005, and, based on prior court findings, ordered $550 of the $1,100 per month of the child support payments extinguished as of June 30, 2005. Because child support was being regularly withheld from Jeffrey's personal injury settlement annuity, the court found Jeffrey had made a net overpayment of child support of about $2,800. The court then charged Jeffrey with the $2,762 previously found to be owing, took interest on that arrearage into account and concluded "the parties are even" on the child support issue. As to the unreimbursed health care expenses Jeffrey claimed he had expended for the children, the court concluded Martha owed Jeffrey $1,693 for one-half of the cost, taking offsets into account. As to future child

support for Jeffrey, Jr., the court disregarded Jeffrey's $1,700 monthly benefit from the personal injury settlement annuity and found Jeffrey had income from unemployment benefits of $1,313 per month.[3] It also determined Martha had income of $2,800 per month and that Jeffrey, Jr., spent 20 percent of his time with his father. Using those figures, the court determined the appropriate guideline amount of child support Jeffrey was obligated to pay was $153 per month. Jeffrey was ordered to pay that amount in monthly child support commencing June 1, 2006.

The court entered its formal findings and order on June 5, 2006.

Martha, now again represented by counsel, filed a motion to vacate the judgment and a motion for new trial. Among other things, Martha argued Jeffrey had not served his supplemental memorandum until one and one-half days before the May 17 trial, had not attached a copy of the *Heiner* case to his supplemental memorandum and had provided only an informal Internet citation to the *Heiner* case instead of the official citation. Jeffrey opposed the motions, contending they were frivolous, and requested attorney fees as sanctions. In reply, Martha asserted Jeffrey's oppositions were frivolous and sought attorney fees as sanctions in turn.

The trial court heard the posttrial motions on July 28, 2006. The court denied the motion to vacate the judgment, denied the motion for new trial and ordered both sides to bear their own attorney fees. Martha timely appealed.[4]

## STANDARD OF REVIEW

A decision modifying a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found upon examination of the record. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1150–1151 [62 Cal.Rptr.2d 466].) The trial court, however, has a duty to exercise an informed and considered discretion concerning the parent's child support obligation. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282–283 [111 Cal.Rptr.2d 755].) In reviewing the exercise of that discretion for abuse, we consider whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153

---

[3] Jeffrey had indicated it was "impossible" for him to obtain employment as a carpenter in the construction industry, in part because the work was seasonal and in part because he was on a doctor's work restriction.

[4] The notice of appeal from the order denying Martha's motion to vacate and request for sanctions was filed after the order's rendition but before entry of the formal order. We treat the notice of appeal as filed immediately after the order's entry. (See Cal. Rules of Court, rule 8.104(e).)

Cal.Rptr. 423, 591 P.2d 911].) When two or more inferences can reasonably be deduced from the facts, we will not substitute our deductions for those of the trial court. (*Ibid.*) The burden is on the complaining party to establish abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) The showing on appeal is insufficient if it presents a state of facts that affords only an opportunity for a difference of opinion. (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138 [63 Cal.Rptr.2d 894].)

We limit our review of the trial court's findings of fact to determining whether they are supported by substantial evidence. (*Heiner, supra,* 136 Cal.App.4th at p. 1520.) "On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence. [Citation.]" (*In re Marriage of Drake, supra,* 53 Cal.App.4th at p. 1151.) An appellant contending some particular finding is not supported must set forth in his or her brief a summary of the material evidence upon that issue, and, if that is not done, the error is waived. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 [160 Cal.Rptr. 516, 603 P.2d 881].) " 'It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings.' [Citations.]" (*Ibid.*)

A trial court's exercise of discretion in refusing to set aside a judgment is also reviewed for abuse of discretion (*In re Marriage of Varner, supra,* 55 Cal.App.4th at p. 138), and we likewise review the grant or denial of attorney fee awards in marital dissolution cases for abuse of discretion (see *In re Marriage of Drake, supra,* 53 Cal.App.4th at p. 1166).

To the extent the trial court's decision reflects an interpretation of a statute, it presents a question of law that we review de novo. (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371–1372 [40 Cal.Rptr.3d 910].)

## DISCUSSION

1. *The Trial Court Properly Excluded As Income the Annuity Purchased from the Undifferentiated and Unallocated Personal Injury Settlement in Calculating Child Support*

Martha contends the trial court erred in determining the personal injury settlement annuity was not income under Family Code section 4058.[5] "Income" is generally defined as "the gain or recurrent benefit that is derived

---

[5] Family Code section 4058 provides: "(a) The annual gross income of each parent means income from whatever source derived, except as specified in subdivision (c) and includes, but

from labor, business, or property [citation] or from any other investment of capital [citation]." (*In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 650 [103 Cal.Rptr.2d 529] (*Scheppers*).)

■ Section 4058, subdivision (a)(1) defines annual gross income as "income from whatever source derived" and includes "commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, *annuities*, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article." (Italics added.) Although the definition of income in section 4058 is broad, it is not limitless. (*Scheppers*, *supra*, 86 Cal.App.4th at p. 649.)

To be considered income, the amount at issue must both fall within the terms of section 4058 and meet the common law definition of income, i.e., the gain or recurrent benefit derived from labor, business, or property. (*Scheppers*, *supra*, 86 Cal.App.4th at p. 650.)

Section 4058's definition of annual gross income is based on the definition of "gross income" in the Internal Revenue Code. (§ 4058; 26 U.S.C. § 61; *Scheppers*, *supra*, 86 Cal.App.4th at p. 650.) Thus, although federal tax law is not conclusive on the interpretation of section 4058, it is persuasive. (*In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 332 [112 Cal.Rptr.2d 893].)

Title 26 United States Code section 104(a)(2) excepts from gross income "any damages (other than punitive damages) received (whether by suit or agreement and *whether as lump sums or as periodic payments*) on account of

---

is not limited to, the following: [¶] (1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, *interest*, trust income, *annuities*, *workers' compensation benefits*, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article. [¶] (2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business. [¶] (3) In the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts. [¶] (b) The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." (Italics added.) The statutory exceptions specified in subdivision (c) are (1) "income derived from child support payments actually received," (2) "income derived from any public assistance program, eligibility for which is based on a determination of need," and (3) "[c]hild support received by a party for children from another relationship . . . ." All further statutory references are to the Family Code unless indicated otherwise.

personal physical injuries or physical sickness." (Italics added.) Those damages are not considered income for federal income tax purposes. (*Henninger v. Southern Pacific Co.* (1967) 250 Cal.App.2d 872, 878 [59 Cal.Rptr. 76]; 26 U.S.C. § 104(a)(2).)

Damages for personal injuries are excludable from gross income because they make the injured party whole from a previous loss of personal rights, i.e., they restore a loss to capital and "roughly correspond to a return of capital." (*Commissioner v. Glenshaw Glass Co.* (1955) 348 U.S. 426, 432, fn. 8 [99 L.Ed. 483, 75 S.Ct. 473]; see *Starrels v. C. I. R.* (9th Cir. 1962) 304 F.2d 574, 576.)

In the present case, the parties in the underlying personal injury litigation expressly agreed in the settlement agreement that all sums "constitute damages on account of personal injuries or sickness, within the meaning of [title 26 United States Code] Section 104(a)(2) . . . ." There is little doubt most, if not all, of the personal injury settlement was "on account of" a personal injury since the record indicates Jeffrey suffered a permanent and serious brain injury that substantially curtails his ability to function and work.

■ In *Heiner*, the court recognized that "past and future loss of earning capacity might well be considered a substitute for wages or earned income, akin to disability or workers' compensation benefits which are included in the definition of income." (*Heiner, supra*, 136 Cal.App.4th at p. 1522.) The parties in *Heiner* had not requested a special verdict on damages, and both the jury award and subsequent settlement agreement provided for an unallocated payment. Under such circumstances, *Heiner* held that the entire amount of a lump-sum undifferentiated personal injury award or settlement is not income. (*Ibid.*)

Without deciding the issue, *Heiner* made a distinction between such lump-sum awards or settlement from annuity payments or structured settlements. (*Heiner, supra*, 136 Cal.App.4th at pp. 1522–1523.) We conclude that the personal injury settlement annuity payments here are also not income under the circumstances as presented.[6]

In the present case, the parties agreed in the settlement agreement that all sums to be paid constituted "damages on account of personal injuries or

---

[6] In holding the entirety of an undifferentiated lump-sum personal injury award or settlement is not income, *Heiner* distinguished personal injury recoveries in *Butler v. Butler* (1985) 339 Pa.Super. 312 [488 A.2d 1141], *In re Marriage of Fain* (Colo.Ct.App. 1990) 794 P.2d 1086 and *In the Matter of Jerome & Jerome* (2004) 150 N.H. 626 [843 A.2d 325], as "involv[ing] either annuity payments or structured settlements." (*Heiner, supra*, 136 Cal.App.4th at pp. 1522–1523.) We do not find this general attempt to distinguish annuities and structured settlements persuasive; the character of the payment does not change simply by being paid out over time.

sickness." Title 26 United States Code section 104(a)(2) expressly provides that the amount of any damages received, "whether by suit or agreement and *whether as lump sums or as periodic payments*," are not included in gross income. (Italics added.) The Internal Revenue Code therefore makes no distinction between "lump-sum" payments or "periodic" payments.

Further, the Internal Revenue Service held in Revenue Ruling 79-220 that the exclusion from gross income provided by title 26 United States Code section 104(a) applied to the full amount of monthly payments received by a plaintiff from a single premium annuity contract in settlement of a personal injury damage suit. The ruling reasoned such amounts should be excluded "because [the plaintiff] had a right to receive only the monthly payments and did not have the actual or constructive receipt or the economic benefit of the lump-sum amount that was invested to yield that monthly payment." (Rev. Rul. 79-220, 1979-2 C.B. 74.) Revenue Ruling 79-220 was subsequently codified at title 26 United States Code section 130. (Sen.Rep. No. 97-646, 2d Sess. (1982), reprinted in 1982 U.S. Code Cong. & Admin. News, pp. 4580, 4583 [explaining that Pub.L. No. 97-473 (Jan. 14, 1983) 96 Stat. 2605, codified Rev. Rul. 79-220 at 26 U.S.C. § 104(a)(2)].)

Title 26 United States Code section 130(a) provides that "[a]ny amount received for agreeing to a qualified assignment shall not be included in gross income to the extent that such amount does not exceed the aggregate cost of any qualified funding assets." The language of the settlement agreement in this case tracks the "qualified assignment" language of title 26 United States Code section 130(c)(2)(B) in providing: "the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiffs or any Payee; nor shall the Plaintiffs or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." Under the settlement terms, Jeffrey has only the right to receive his monthly payments and no actual or constructive benefit of the lump sum invested to generate such periodic payments.

In *Western United Life Assur. Co. v. Hayden* (3d Cir. 1995) 64 F.3d 833, the Third Circuit observed: "Structured settlements are a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. § 104(a)(2) (providing that the amount of any damages received on account of personal injuries or sickness are excludable from income). However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and *all of these payments are considered damages received on account of personal injuries or sickness* and are thus excludable

from income. Accordingly, a structured settlement effectively shelters from taxation the returns from the investment of the lump-sum payment." (*Id.* at p. 839, italics added.) Such an arrangement is " 'merely a matter of convenience to the [defendant] and d[oes] not give the recipient any right in the annuity itself.' " (*Id.* at p. 840, italics omitted.) Since the personal injury plaintiff never has actual or constructive receipt of the lump-sum amount, he or she need not include the investment yield on the amount as taxable income. The exclusion therefore applies to the full amount of the annuity payments because the full amount is received as damages "on account of" personal injuries. (*Ibid.*)

California law defines income in terms of "the gain or recurrent benefit that is derived from labor, business, or property [citation] or from any other investment of capital [citation]." (*Scheppers, supra,* 86 Cal.App.4th at p. 650.) *Heiner* did not discuss nor consider periodic payments in light of this requirement. Since Jeffrey's payments expressly are received "on account of personal injuries," they do not fall within the generally accepted definition of "income," i.e., a gain or recurrent benefit derived from labor, business, property or investment of capital. Moreover, the measure of Jeffrey's loss "on account of personal injury" in the case at bar is $1,700 per month over the course of his life. That sum represents Jeffrey's loss of "capital" and the amount necessary to make him whole from the previous loss of his personal rights. The fact that the defendant and its insurers financed this sum by purchasing an annuity at a lesser cost does not alter Jeffrey's measure of loss. Regardless of the tort defendant's ability to purchase an annuity, Jeffrey (or, in case of his death, his beneficiary) had the right only to receive the specified monthly payment for his lifetime or, in the case of his beneficiary, for 20 years. The time-price discount from the investment of the lump sum redounded to the benefit of the tort defendant, not Jeffrey, who achieved no gain or "income" from that investment.

As *Scheppers* explained, in California, "[a]lmost every type of income specified by section 4058, subdivision (a), is either a return from labor, business, or property (such as wages, dividends, and rents) or else a substitute for that return (such as disability insurance benefits)." (*Scheppers, supra,* 86 Cal.App.4th at p. 650.) The traditional understanding of "income" is the gain or recurrent benefit derived from labor, business or property or from any other investment of capital. (*Ibid.*; see also *McCulloch v. Franchise Tax Bd.* (1964) 61 Cal.2d 186, 192 [37 Cal.Rptr. 636, 390 P.2d 412]; *Wells v. Wells* (1944) 64 Cal.App.2d 113, 115–116 [148 P.2d 126].) Since 1964, our Supreme Court has infused a statutory reference to "income" with its common or dictionary meaning, namely: " 'That *gain* or recurrent *benefit* . . . which proceeds from labor, business or property. . . .' " (*McCulloch v.*

*Franchise Tax Bd., supra,* at p. 192, italics added.) Twenty years previous to that, the Court of Appeal had defined "income" in similar terms. (*Wells v. Wells, supra,* at p. 116.) We presume the Legislature was aware of this history when in 1993 it reenacted Civil Code former section 4721, subdivision (f) as section 4058 without substantive change.

That the parties labeled the periodic payments as "annuity" is not dispositive. The defendant and its insurer in Jeffrey's personal injury action may have reserved the right to fund, and did fund, the periodic payments through the purchase of an annuity policy at their option, but that action did not transmute the nature of the settlement funds into "income." (See *In re Marriage of Devlin* (1982) 138 Cal.App.3d 804, 808 [189 Cal.Rptr. 1] [absent express agreement or commingling, conversion of personal injury recovery from money into other form of property did not alter its character].)

■ Our holding that the annuity payments here do not constitute income in determining child support does not suggest that all or a part of a personal injury settlement annuity may never be income for this purpose. An underlying settlement agreement may spell out expressly or impliedly the different components of future payments by, for example, labeling a portion reimbursement for lost past or future wages. Events leading up to the settlement, including litigation proceedings, may also demonstrate that an apparently undifferentiated settlement was in fact allocated to various components. We hold here that the person challenging what appears to be an undifferentiated settlement agreement bears the burden of proving it otherwise. Martha did not do so.

### 2. *Martha Was Not Denied Due Process*

Martha asserts she was denied her constitutional right to due process because Jeffrey's supplemental trial memorandum was filed too late and failed to provide an official citation to *Heiner.* However, when Martha appeared in propria persona at trial, she did not object to the court's consideration of the late supplemental memorandum, move for a continuance or request additional time to brief the *Heiner* case. She answered "Yes" when the court asked if the parties were ready to proceed. She then proceeded to address the substantive issues and even obtained a withholding order from the court directing that child support should continue to be withheld from Jeffrey's payment. As a party representing her own interests, Martha was not entitled to special treatment from the court once she discharged her attorney and substituted herself as her own attorney. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984 [35 Cal.Rptr.2d 669, 884 P.2d 126].)

The court had alerted both parties to the possible significance of the *Heiner* case at the prior hearing on March 9, 2006, when Martha was present and represented by counsel. It advised the parties the case "might have some impact on the issue of the personal injury annuity." Martha thus had ample notice and a "full and fair opportunity to present all competent and material evidence relevant to the matter to be adjudicated." (*Lammers v. Superior Court* (2000) 83 Cal.App.4th 1309, 1319, 1325 [100 Cal.Rptr.2d 455]; see also *Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 96 S.Ct. 893] ["The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' "].)

### 3. *The Trial Court Did Not Abuse Its Discretion in Reducing Child Support*

Martha complains the trial court abused its discretion by significantly reducing the child support for their remaining minor child based upon Jeffrey's recent period of unemployment as a carpenter in the movie construction industry. She submits that Jeffrey's current unemployment is not a sufficiently changed circumstance to support the modification arguing Jeffrey's work was seasonal in nature, he has frequently been unemployed and he has the capacity to make a great deal of money when he does find work. (See § 4058, subd. (b).) There is no competent evidence in the record for the trial court to have imputed income to Jeffrey, and we decline to do so.

### 4. *The Trial Court Did Not Abuse Its Discretion in Ordering Reimbursement for the Minor Children's Uninsured Health Care Expenses*

Jurisdiction was reserved over the issue of overpayment or underpayment of medical bills. The marital settlement agreement incorporated in the dissolution judgment provides for both parties to share equally in "[a]ny medical, dental, orthodontia or other health care expenses not covered by insurance." The trial court concluded Martha owed Jeffrey a net balance of $1,693 for her share of the minor children's uninsured medical costs. We find substantial evidence in the record of the unreimbursed expenses.

Martha contends the trial court abused its discretion in ordering reimbursement because section 4063, subdivision (b) requires a parent seeking reimbursement to present an itemized statement of costs to the other parent within 30 days. In opposing the reimbursement request, Martha provided the court with no evidence of when she received Jeffrey's statement of costs. Moreover, the marital settlement agreement does not set a time limit for presentation of a bill for such expenses. Indeed, section 4063 does not prohibit a party from seeking reimbursement in case of a failure to timely present an itemization of costs. Rather, section 4063, subdivision (c) allows

the court to award filing costs and reasonable attorney fees "if it finds that either party acted without reasonable cause." The court implicitly found Jeffrey did not act unreasonably under the circumstances and properly exercised its discretion in ordering Martha to reimburse Jeffrey for one-half of the minor children's uninsured health care expenses.

### 5. *The Trial Court Properly Denied the Motion to Vacate the Judgment*

A judgment or decree based on a decision of the court may, on motion of the aggrieved party, be set aside or vacated and another and different judgment entered when there was an incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts. (Code Civ. Proc., § 663; see 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, §§ 147–148, pp. 650–651.) The moving party must show the inconsistency materially affected his or her substantial rights, entitling the party to a different judgment. (8 Witkin, Cal. Procedure, *supra*, §§ 147–148, pp. 650–651.)

Martha contends the trial court should have granted her motion to vacate the judgment because it mischaracterized the personal injury settlement annuity as an unallocated and undifferentiated lump-sum settlement. As we have discussed, there was no mischaracterization. The trial court properly exercised its discretion.

### 6. *The Trial Court Properly Denied the Request for Attorney Fees As Sanctions*

Martha apparently contends the trial court abused its discretion in denying her request for attorney fees as sanctions under section 271 and Code of Civil Procedure section 128.5.[7] She argues the trial court disregarded "numerous distortions and misrepresentations" made by Jeffrey and his counsel in the trial court. We have reviewed the complete record and are satisfied the trial court did not abuse its discretion in denying Martha sanctions.

---

[7] Section 271, subdivision (a) provides, in pertinent part, "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." Code of Civil Procedure section 128.5, subdivision (a) provides, in pertinent part, "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

## DISPOSITION

The orders are affirmed. Respondent is to recover his costs on appeal.

Cooper, P. J., and Rubin, J., concurred.