Filed 5/20/13  Marriage of Haynes CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of CARMEN and MELVIN HAYNES. | |
| CARMEN HAYNES,<br><br>     Respondent,<br><br>v.<br><br>MELVIN HAYNES,<br><br>     Appellant. | A135152<br><br>(Solano County<br>Super. Ct. No. FFL112966) |

Melvin Haynes, appearing in propria persona, appeals from a judgment dissolving his marriage to Carmen Haynes and dividing the parties' property.[1] He contends that despite what he believed to be an agreement by the parties that the date of their separation was December 18, 1993, Carmen was allowed to surprise him at trial by presenting evidence and argument that the date of separation was actually "sometime in 2008" and that the court erred by prohibiting him from rebutting this new theory. He also argues that the court applied an incorrect legal standard to determine the date of separation and ignored relevant evidence that supported an earlier date of separation. Finally, he argues that the court erred in denying his motion for reconsideration, which relied on additional evidence not presented at trial. The record demonstrates, however, that Melvin was given

---

[1] "As is customary in family law cases where the parties shared the same surname, we refer to them by their first names for ease of reference, meaning no disrespect." (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1466, fn. 1.)

1

sufficient notice of Carmen's contention and that he did not object to her argument or evidence at trial or request a continuance to present additional responsive evidence. The trial court applied the proper standard in determining the date of separation and substantial evidence supports the court's finding. For these reasons, among others, the court did not err in denying Melvin's motion for reconsideration. Accordingly, we shall affirm the judgment.

**Factual and Procedural History**

The parties were married in July 1951. On January 19, 2010, Carmen filed a petition for dissolution. The petition alleges that December 18, 1993 was the date of separation. Melvin filed a responsive pleading in May 2010 that also indicated the date of separation was December 18, 1993. In advance of trial, Carmen submitted a trial brief reiterating that the date of separation was in 1993, but also noting that "[t]he date of separation herein is uncertain as the parties continued to act (as to third parties) as husband and wife well after their claimed date of separation."

At trial, evidence was presented establishing that between 1951 and 1993, the parties attempted to separate a number of times but reconciled each time. In 1993, Melvin moved out of the family home and the parties did not live together for any significant period of time thereafter. Although disputed by Melvin, Carmen testified that after Melvin moved out in 1993 the parties continued an intimate relationship, took family vacations and attended family gatherings together, filed joint tax returns for a number of years, engaged in business transactions together, and held themselves out to friends and family as married. While Melvin testified that he believed the marriage was over when he moved out in 1993, Carmen testified that she held out hope for a reconciliation until 2008 when she finally decided to end her marriage. She explained that in January 2008 she and Melvin had travelled to Reno to celebrate his birthday but ended up in a confrontation during which he tried to choke her. It was only after this incident that she told Melvin the marriage was over and went to see a paralegal about filing for a divorce. Melvin acknowledged that he went on the trip to Reno with Carmen, but denied choking her.

2

In closing argument, Carmen's counsel argued the 1993 "move-out" was a starting point for the court's inquiry into the date of separation but that Melvin "availed himself of the benefits, protections and savings of filing joint tax returns" for years after and that there was evidence they behaved as a married couple until 2008. Counsel also argued that the precise date of separation is not crucial because the parties were not dividing pensions and that all of the parties' assets, including a ranch near Arbuckle, California, a motel and a duplex, were either purchased with community funds prior to 1993 (the Arbuckle ranch) or traceable to community funds (the motel and duplex). Melvin did not direct any closing argument to the date of separation but rather argued as if it were established that the date was in 1993. He argued that the motel and the duplex were purchased after 1993 and thus were clearly his separate property. As to the ranch, he argued that no community funds were used in its purchase and, even if they were, Carmen signed an enforceable quitclaim deed in 1995 making the ranch his separate property.

On January 31, 2012, the court entered a judgment of dissolution. The court found that the date of separation is "the day after [Melvin's] birthday in 2008." The court found further that most of the parties' assets were community property subject to an equal division. The court found that the Arbuckle ranch was purchased in 1985 with community funds and that the quitclaim deed Carmen signed in 1995 transferring her interest in the ranch to Melvin should be set aside as the product of undue influence. The court found that the motel and duplex were acquired prior to the parties' separation in 2008 and that community funds were used to acquire both assets.

On February 9, 2012, Melvin filed a motion for reconsideration. In it he argued that the court abruptly ended the trial without allowing him to "put on the rest of [his] case" and that if he had been given the chance, he would have, among other things, presented evidence that he was not with Carmen in Reno in 2008 and instead was on a cruise with his girlfriend. He also argued that he was surprised by Carmen's challenge to the date of separation and that he should have been given an opportunity to respond. The trial court denied the motion for reconsideration, finding that it was both untimely and without merit.

Melvin filed a timely notice of appeal.

## Discussion

1.      **Melvin's due process rights were not violated**.

Due process requires that a party to a dissolution proceeding be given adequate notice and a " 'full and fair opportunity to present all competent and material evidence relevant to the matter to be adjudicated.' " (*In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 235-236; see also *Mathews v. Eldridge* (1976) 424 U.S. 319, 333 ["The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' "].)

Contrary to Melvin's arguments on appeal, Carmen's trial brief provided ample notice that the date of their legal separation would be at issue in the trial. The parties' pleading did not create a binding agreement as to the date of separation and Carmen was not required to amend her petition prior to trial. (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 659 [there is "neither a jurisdictional nor an equitable bar to the court's consideration of evidence bearing on the actual date of separation, irrespective of the recitations in the . . . petition"].)

Likewise, the court did not abruptly or prematurely end the trial without giving Melvin a full and fair opportunity to present his case. At the conclusion of Carmen's testimony, the court clearly asked Melvin whether he had any other evidence to present and he responded, "I have no more evidence." After Carmen's counsel indicated that he had no rebuttal evidence to present, the court asked the parties a few questions. When the court's questioning broke down almost immediately into a debate between Carmen and Melvin, the court ended it and called for closing arguments. Melvin did not object or ask for an opportunity to present additional evidence. As the court noted in denying Melvin's motion for reconsideration, Melvin did not focus any argument on the date of separation. Rather, "he thought that those deeds that she signed were, in his mind, sufficient evidence for his case. And . . . if it was, then the date of separation and all this other stuff doesn't matter so much." It was only after the court set aside the quitclaim deeds that Melvin shifted his focus to contesting the date of separation.

4

*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, cited by Melvin, is entirely distinguishable. In that case, the appellate court reversed the judgment of dissolution on due process grounds where the trial court "essentially ran the trial on a stopwatch, curtailing the parties' right to present evidence on all material disputed issues. Using the constant threat of a mistrial, [the judge] pressured [the attorney] into rushing through her presentation and continuing without a break. . . . Most damning, the judge abruptly ended the trial in the middle of a witness's testimony, prior to the completion of one side's case and without giving the parties the opportunity to introduce or even propose additional evidence." (*Id.* at p. 292.) Nothing of the sort occurred at the trial in this case.

2. **The court did not err in determining the date of separation**.

Recognizing that "rifts between spouses may be followed by long periods of reconciliation, and the intentions of the parties may change from one day to the next," courts have held that "legal separation requires not only a parting of the ways with no present intention of resuming marital relations, but also, more importantly, *conduct* evidencing a *complete and final break* in the marital relationship." (*In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, 736.) Thus, a court decides the date of separation by examining two components, one subjective and the other objective. (*In re Marriage of Norviel* (2002) 102 Cal.App.4th 1152, 1158.) The subjective component examines whether either of the parties harbors the subjective intent to end the marriage. The objective component examines whether there is objective conduct evidencing and in furtherance of that intent. (*Id.* at p. 1159.) The determination of a date of separation is proven by a preponderance of evidence (*In re Marriage of Peters* (1997) 52 Cal.App.4th 1487, 1489, 1491) and the testimony of a single witness may be sufficient to prove a fact (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823). We review the correctness of the trial court's determination under the substantial evidence standard of review. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421.) As a reviewing court, we must view the evidence in the light most favorable to the prevailing party, giving Carmen the benefit of

every reasonable inference, and resolving all conflicts in her favor. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Here, the court found that "Although both parties may have had the subjective intent to end the marriage as far back as 1993, no actions furthering that intent occurred until 2008 when [Carmen] told [Melvin] their problems were irreversible and she hired a lawyer to file for divorce. That was the only real objective evidence of conduct furthering either parties' intent to end the marriage." The court explained that "aside from moving out, [Melvin] continued on in the same type of marital relationship as he had previously. He went to [Carmen] for sex. He filed their taxes together. He allowed Christmas cards to go out together. He continued to negotiate property deals with her through 2005." While moving out of the family home is one factor to consider, it is not determinative and the court reasonably concluded based on all the evidence presented that the date of separation was in 2008. (See *In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, 452 ["All factors bearing on either party's intentions 'to return or not to return to the other spouse' are to be considered."].)

Contrary to Melvin's argument, the court did not "refuse to consider" relevant evidence presented at trial. Although Melvin attempted to dispute much of Carmen's testimony, the trial court credited Carmen's testimony, which supports the court's findings. Under the substantial evidence test, we do not reweigh the evidence. We must affirm the judgment if "there is any evidence (or any reasonable inferences which can be deduced from the evidence), whether contradicted or uncontradicted, which, when viewed in the light most favorable to . . . a court's judgment, will support the . . . judicial findings of fact." (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 849, fn. 11.)

Likewise, the court did not err in rejecting Melvin's belated attempts to introduce new evidence after the judgment was issued. Although Melvin acknowledged at trial that he went to Reno with Carmen in 2008, after the judgment was issued he began denying that he was there and claiming instead that he was on a cruise with his girlfriend. He attempted, through a motion for reconsideration, to introduce new evidence, including a

6

declaration from his girlfriend, that he asserts proves that Carmen was lying about the Reno trip and therefore calls into question the overall credibility of her testimony. There was, however, no proper justification for the belated introduction of this evidence. (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 [party seeking reconsideration under Code of Civil Procedure section 1008 must show not only new or different facts, circumstances or law, but must also provide a satisfactory explanation for the failure to produce the new evidence earlier].)

**Disposition**

The judgment is affirmed. Carmen is to recover her costs on appeal. Carmen's request for an award of attorney fees on appeal is denied without prejudice to a request for fees in the trial court.


_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.