Filed 8/28/13  Carpy v. Carpy CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN CARPY,<br><br>        Appellant,<br><br>v.<br><br>ANN CARPY,<br><br>        Respondent. | A135261<br><br>(Napa County<br>Super. Ct. No. 2638095) |

Appellant John Carpy, an adult who is "incapacitated from earning a living" and "without sufficient means," challenges one provision of an order requiring his mother, Ann Carpy,[1] to provide child support under Family Code section 3910.  Specifically, John challenges the provision of the support order specifying support will terminate on his mother's death.  We agree this provision was not properly included in the support order, order the phrase stricken and, as modified, affirm the support order.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2007, John filed a petition "to enforce parental duty to support indigent adult child" under Family Code section 3910.[2]  John alleged he is incapacitated from

_____

[1] We refer to the parties by their first names to avoid confusion and intend no disrespect.  (See *In re Marriage of Witherspoon* (2007) 155 Cal.App.4th 963, 967, fn. 2.)

[2] Family Code section 3910, entitled "Duty to Maintain Incapacitated Child," provides:  "(a) The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means.  [¶] (b) Nothing in this section limits the duty f support

1

earning a living and without sufficient means due to a persistent schizophrenic condition which precludes him from maintaining gainful employment. He further alleged his mother, Ann, has a duty to maintain him and "currently has the ability to do so." He prayed for an order requiring Ann to pay for support "in such amounts and under such terms as the court deems proper."

Ann filed a response denying on grounds of lack of investigation that John is incapacitated from earning a living or without sufficient means or unable to maintain gainful employment. She acknowledged, however, that if John, in fact, is incapacitated from earning a living and without sufficient means as defined in section 3910, she would have a duty to provide maintenance and that she has the ability to reasonably contribute to his needs. She denied that she had refused and failed to provide any support, alleging she "has authorized proposals for providing assistance to [John] which have gone unanswered." She asked that the court determine whether section 3910 applies and, if so, to "set reasonable support."

The parties ultimately stipulated John is "incapacitated from earning a living" and "without sufficient means" within the meaning of section 3910. Accordingly, the sole issue before the trial court was the amount of support that should be ordered.

John advocated the court utilize the Statewide Uniform Support Guideline (§ 4050 et seq.). He claimed Ann's annual gross income for the three preceding years ranged from approximately $494,000 to over $600,000, her monthly net disposable income ranged from approximately $37,000 to over $47,500, and she should provide $6,000 a month in support. He also claimed the support should be retroactive to the date of his petition, and the court should approve the creation of a trust to receive the payments to Ensure the money is distributed prudently and used only for John's legitimate needs. John asserted the fact he had previously received $450,000 from a family trust should be disregarded. He claimed Ann and other trustees had breached the terms of the trust by

under Sections 3900 and 3901." (Fam. Code § 3910.) All further statutory references are to the Family Code unless otherwise indicated.

2

distributing the funds directly to him, instead of to a trust for his benefit, and, given his disability, the funds had been quickly squandered. Thus, according to John, the instant petition was the result of Ann's and the trustees' own mishandling of the trust distribution.

Ann had a sharply different perspective on the situation. She stated her husband had been successful in the wine business and in real estate investment, and they had provided well for their children, including through ownership interests in various family businesses. As a result of the sale of such interests, John had received more than $400,000. Ann claimed she and her husband had urged John to get help, but he had not done so and, instead, dissipated his resources. John then came to believe other funds had been put away for him, but were "hidden" by the rest of the family. He became involved in various trust accountings, "filing multiple objections and seeking tons of documentation." "His plan seemed to be to become such a nuisance that the family would come to some agreement" to set aside a certain amount of the funds for him, alone. Ann believed John's primary purpose was "to open the door for discovery concerning [her] income, her interest in all of the trusts and what had become of all the money that Petitioner thought was hidden from him." John had not discovered any supposed secret funds, nor had he obtained any personal share of the trust assets.[3] John had also taken the position it was Ann's obligation to pay for a storage unit containing his belongings. He thus failed to pay the fees for the unit, and his belongings were auctioned off. A family member arranged to have a third party purchase any family heirlooms to Ensure they were not lost. John had then sued Ann seeking to recover "hundreds of thousands of dollars" for the stored items he had lost because of her alleged breach of a fiduciary duty to pay the storage fees. After "expensive, and extensive, discovery," that case was dismissed. Ann viewed the petition for support as John's latest effort to "seek an extravagant amount of support."

---

[3] The trust accounting litigation was, however, still ongoing.

Ann disagreed that the guidelines to determine "support" for minor children had to be used in determining the amount of "maintenance" for an adult child, asserting a parent has no legal duty under section 3910 to "maintain" an adult child who is earning, for example, only minimum wage. In her view, the guidelines apply to disputes between parents concerning their obligations to their minor children. The maintenance required for an adult child under section 3910 "should be no greater than the amount Petitioner would earn if he were not incapacitated from earning a living so that he was not indigent." Ann asserted "section 3910 was not designed to create a windfall or allow adult children to share in the wealth or income of their parents, beyond that necessary to meet their minimum needs." Ann also disagreed support should be retroactive to the date John filed his petition, asserting there was "no excuse" for John's 10-month delay between the filing and service of his petition.

The petition was heard over the course of two days, in part on the basis of numerous stipulated facts. The court ruled from the bench as follows: John is incapacitated from earning a living and without sufficient means as those phrases are used in section 3910. Application of the Statewide Child Support Guidelines would not be appropriate, although a guideline child support calculation using the DissoMaster program would result in support of $4,408 per month. Based on the evidence presented as to John's reasonable and necessary expenses, the appropriate amount to maintain him as an incapacitated adult child under section 3910 is $4,200 per month. The court recognized "this is a large sum"—"four times as much as he was getting now"—but concluded it was appropriate given John's expenses for counseling and medication. The court went on to state that if John was not under such treatment, "the [c]ourt would certainly look at that on the review of child support." Given John's resources and lack of debt, the court also ruled retroactive support was not warranted and would result in a "windfall." The court additionally directed that a trust be established to receive the payments for the benefit of John. As to the commencement and duration of the support, the court stated: "Now I am going to make this order to commence January 1st, 2012. It will be continued each month thereafter until further order of the [c]ourt or death of Ann

4

Carpy or of the child John Carpy." Neither party made any objections during the hearing to any of the court's rulings.

Counsel for Ann agreed to prepare a written order for the court. On submitting the proposed order, counsel advised the court that counsel for John was in agreement with the language, except for the provision stating the order for support would terminate on the earlier of the "death of Ann Carpy." Counsel for Ann had advised counsel for John that this language accurately set forth the ruling of the court.

Counsel for John submitted a responding declaration, acknowledging neither party had raised the issue of the order's duration following Ann's death. "Had the issue been raised," counsel stated he would have cited *In re the Marriage of Drake* (1997) 53 Cal.App.4th 1139 (*Drake*), which he characterized as "directly address[ing] the issue" and "supporting" the postdeath continuance of a support order. Counsel also stated, however, that while he "believe[d]" Ann's support obligation can and should survive her death, "I do not believe the issue needs to be resolved at this time. Indeed, depending upon the circumstances at the time of Ann Carpy's death, the issue may never have to be resolved." Counsel urged that deleting the reference to Ann's death would "leave the issue for resolution at a later date."

Counsel for Ann submitted a declaration in reply. Counsel disputed that *Drake* was applicable and asserted deleting the specific reference to Ann's death would "create yet another litigated issue between John and his siblings. In essence, it will be John's siblings—as Ann's descendants and beneficiaries—who would be paying John's support after Ann's death."

The court did not modify its ruling, and signed and filed the written order providing, inter alia, that: "The payment of adult child support provided for herein shall continue so long as Petitioner remains incapacitated from earning a living and without sufficient means, as that phrase is used in Family Code section 3910(a). The order for support shall terminate earlier upon the death or marriage of John Carpy, the death of Ann Carpy, or further order of the court."

DISCUSSION

John contends the duty to provide support pursuant to section 3910, subdivision (a), does not automatically end at a parent's death, and thus the trial court erred it specifying the support order would end on Ann's death.

At oral argument, counsel for Ann did not dispute that a parent's obligation under that statute, to support to the extent of his or her ability a disabled and indigent adult child, does not automatically cease on the parent's death and may continue as a charge against the estate *if* the child remains incapacitated from earning a living and is without sufficient means. Counsel pointed out that if the adult child inherits or otherwise acquires adequate resources, he or she will no longer be without sufficient means. Thus, counsel argued the order should be affirmed on the ground the court impliedly found that, given Ann's current assets and estate plan, John will, on her death, no longer be "without sufficient means" and thus no longer entitled to support upon her death.

Given Ann's concession as to the operative effect of section 3910, subdivision (a), we need not, and therefore do not, discuss the parameters of the parental duty of support the statute imposes. Suffice it to say that *Drake* concluded, in the context of affirming a security order under section 4012, that court-ordered support for an incapacitated adult child without sufficient means is a charge upon the parent's estate. (*Drake, supra,* 53 Cal.App.4th at pp. 1163–1164.)

We therefore focus solely on whether the record supports the implied finding Ann contends supports the provision of the order terminating the child support upon her death. We conclude it does not. The record simply does not establish that Ann's estate will remain as it was at the moment in time when the trial court issued its support order. For example, the majority of Ann's assets—$6.9 million—are held in a *revocable* survivor's "sub-trust." A significantly lesser amount—$2.9 million—is held in two irrevocable "sub-trusts." There is no evidence that there will be no change to the revocable sub-trusts. There also is no evidence the assets in the irrevocable sub-trusts will remain fixed. Indeed, the latter consist largely of investment accounts and business interests; what these assets will be worth at Ann's death is anyone's guess. In short, the evidence as to Ann's

6

current assets and estate plan did not, and could not, support an implied finding that upon her death John will have sufficient means and thus no longer fall under the protection of section 3910, subdivision (a).

We therefore conclude the trial court improperly specified that its support order will terminate on Ann's death and direct that the phrase "the death of Ann Carpy," be stricken from the order.

We hasten to add that Ann (or her personal representative, or executor of her estate, or the successor trustee(s) of the "sub-trusts" or any other trusts holding her assets) may move to modify the ordered support should John's circumstances improve for any reason other than the ordered support, including termination of the support should John thereby no longer be "without sufficient means." (Cf. *In re Marriage of McCann* (1994) 27 Cal.App.4th 102, 107–108 [holding support order for minor children did not automatically terminate when noncustodial parent assumed custody following death of custodial parent; father was required to seek modification of the order if he believed the death of the mother warranted modification or termination]; *In re Marriage of Gregory* (1991) 230 Cal.App.3d 112, 116 [holding support order for minor children did not terminate on custodial parent's death; a "parent must look for assistance from the courts in order to modify or terminate a support order"].)

**DISPOSITION**

The language at page 4, lines 24 and 25, of the support order— "the death of Ann Carpy,"—is hereby stricken, and as modified, the order is otherwise affirmed.  Appellant to recover costs on appeal.

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.

8