Filed 1/25/24  Marriage of Bonner CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of CANDY and TERENCE BONNER. | |
| CANDY BONNER, | D081725 |
| Respondent, | (Super. Ct. No. ED88462) |
| v. | |
| TERENCE BONNER, | |
| Appellant. | |

APPEAL from a judgment and postjudgment order of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Affirmed.

Terence Bonner, in pro. per., for Appellant.

No appearance for Respondent.

This marriage dissolution action involving Terence and Candy Bonner, returns to us for a third appeal.[1]  In our *2022 Opinion*, we remanded to the trial court with specific directions to, among other things, "resolve an inconsistency between (a) the mathematical sum of the specific individual monetary amounts identified throughout the [2020] Statement of Decision as credits to either party, and (b) the total amount of $19,016.30 identified as the equalization payment that Candy would have otherwise owed to Terence." (*2022 Opinion, supra,* D078148.)  On remand, the trial court entered an amended judgment, explaining that the inconsistency we detailed in the *2022 Opinion* was the result of a mathematical error, which the trial court corrected in the amended judgment.  After entry of the amended judgment, Terence filed a motion for a new trial and a motion to set aside and vacate the judgment.  The trial court denied Terence's postjudgment motions, explaining that Terence sought relief that exceeded the scope of the authority accorded to it by the limited remand described in the *2022 Opinion*.

Terence appeals from the amended judgment, as well as from the trial court's denial of his postjudgment motions.  We conclude that Terence's appeal lacks merit, and we accordingly affirm the judgment and the order denying the postjudgment motions.

---

[1]    The two prior appeals resulted in the following opinions:  *In re Marriage of Bonner* (Dec. 22, 2015, D066627) [nonpub. opn.]; and *In re Marriage of Bonner* (Apr. 22, 2022, D078148) [nonpub. opn.] (*2022 Opinion*). As is customary in family law matters, because the parties have the same last name, we refer to them by their first names to avoid any confusion, and we intend no disrespect by doing so.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In setting forth the relevant factual background for this appeal, we turn to our *2022 Opinion*:

"Terence and Candy were married in March 1978. On August 30, 2012, Candy filed a petition for dissolution, in which she alleged August 29, 2012, as the date of separation. In January 2014, the trial court entered a judgment of dissolution as to the parties' marital status only.

"Terence is retired from employment with an agency of the federal government, where he worked from May 1978 until May 2010. Since retirement, Terence has received a federal pension, but he did not share the pension with Candy for the first two years after separation. In July 2014, in response to a request filed by Candy, the trial court ordered Terence to pay Candy half of his pension on a going forward basis. A domestic relations order (DRO) was created to implement the division. Terence made direct payments to Candy for her share of his pension until the pension administrator started making payments to Candy in 2017.

"Candy worked for the County of San Diego during the marriage, and she retired in 2019. In 2019, Terence stipulated to a qualified domestic relations order (QDRO) that divided Candy's pension.

"During the marriage, the parties purchased a house in El Cajon and a house in Campo. After the date of separation until July 2013, the parties lived together in the Campo house. After that date, Candy moved into the El Cajon house. The El Cajon house produced rental income during the parties' entire separation, including when Candy resided in it.

"On eight days between January 29, 2019, and February 11, 2020, the trial court held a trial on reserved marital property issues, as well as on Candy's request for spousal support and both of the parties' requests for an award of attorney fees as a sanction under [Family Code] section 271. Among the community

3

property items at issue were: (1) the parties' two real properties; (2) the parties' respective pensions; (3) Candy's retirement account; and (4) the parties' debt. The parties also sought reimbursement for certain payments they made from separate property funds during separation. During the trial, Candy was represented by counsel, and Terence represented himself.

"In a 46-page statement of decision [issued on August 7, 2020](the [2020] Statement of Decision), the trial court made a series of orders concerning the division of the parties' community property and the requests for reimbursement. In addition, the trial court rejected Candy's request for spousal support. The trial court also ordered that Terence pay $37,500 of Candy's attorney fees as a sanction pursuant to [Family Code] section 271, to be paid at the rate of $250 per month. However, the trial court reduced the amount of sanctions that Terence was obligated to pay based on the amount of an equalization payment that it concluded Candy owed to Terence, which it stated was $19,016.30. The trial court reserved jurisdiction on several issues, including spousal support. It also ordered that a new DRO for Terence's pension be prepared to accurately reflect Terence's time of service attributable to his unused sick leave. The trial court ordered that an expert be appointed to calculate the amount that Candy was underpaid from Terence's pension income under the prior version of the DRO. A judgment on the reserved issues was entered on August 7, 2020, which expressly incorporated the [2020] Statement of Decision.

"Terence filed a motion for a new trial and a motion to set aside and vacate the judgment, which the trial court denied.

"Terence filed a notice of appeal from the judgment as well as from the trial court's order denying his postjudgment motions." (*2022 Opinion, supra,* D078148.)

Terence raised a wide range of issues in his appeal, all of which we addressed in the 58-page *2022 Opinion*. In the *2022 Opinion*, we determined that a remand to the trial court was warranted with respect to three different issues raised by Terence. The first two issues, which are not relevant here,

4

involved (1) the trial court's failure to rule on Terence's request for reimbursement of the auto insurance premiums he paid for Candy; and (2) the trial court's retention of jurisdiction over spousal support based on its mistaken understanding that it lacked the discretion to terminate its jurisdiction over that issue. (*2022 Opinion, supra,* D078148.)

The third issue, which is implicated in this appeal, concerned an inconsistency in the 2020 Statement of Decision with respect to the amount of the equalization payment that Candy would be required to pay to Terence, prior to taking into account the trial court's award of sanctions to Candy. As our discussion of that issue is pertinent here, we set it forth in full:

> "Referring to the [2020] Statement of Decision, Terence states that because the trial court did not itemize the credits awarded to each party, the judgment is unclear. Terence gives a single example, explaining that 'the court's judgment stated that Terence would have been entitled to an equalization payment of $19,016.30 if it had not imposed $37,500 in [Family Code] section 271 sanctions against him, but this figure is irreconcilable with the other amounts articulated in the court's judgment.' Terence refers to the following language in the [2020] Statement of Decision: 'The Court orders [Terence] pay $37,500 in sanctions under . . . [Family Code] section 271. $18,483.70 in attorney's fees are to be paid directly to [Candy's] counsel . . . . The other $19,016.30 is satisfied from [Terence's] share of community assets that would have otherwise resulted in an equalization payment. . . . [¶] . . . Neither party owes the other an equalization payment. Without the award of sanctions under [Family Code] section 271, [Candy] would have owed [Terence] $19,016.30. But the Court has applied that amount to the sanctions award under [Family Code] section 271.' Terence contends that it is unclear how the trial court arrived at the figure of $19,016.30.

> "We agree with Terence's assessment. In the course of the 46-page [2020] Statement of Decision, the trial court identifies numerous credits for both Candy and Terence, all of which should logically inform the total amount of the equalization payment that Candy would owe Terence prior to the imposition of

5

sanctions. However, when we total all of those credits, we are unable to understand the basis for the trial court's statement that Terence would be entitled to an equalization payment of $19,016.30. Either the trial court committed a mathematical error, or there is some other error in the [2020] Statement of Decision (such as an inadvertently omitted credit or a typographical error) that would explain the inconsistency. We are unable, on appeal, to figure out how the inconsistency should be resolved.

"The trial court based its order that Terence pay $18,483.70 in attorney's fees to Candy's counsel on the assumption that Candy would have owed an equalization payment of $19,016.30. However, the order for Terence to pay $18,483.70 would be erroneous if Candy's equalization obligation (based on the credits identified in the [2020] Statement of Decision) did not, in fact, total $19,016.30. As it currently stands, the judgment is internally inconsistent and unclear as to the parties' financial obligations toward each other. Therefore, we remand to the trial court with directions that it (1) resolve the inconsistency by clarifying how it arrived at the conclusion that Terence would be entitled to an equalization payment of $19,016.30 prior to the application of the sanctions award, and (2) in the course of doing so, correct any figures in the [2020] Statement of Decision that it discovers to be inaccurate, and amend the judgment accordingly." (*2022 Opinion, supra,* D078148.)

Based on our identification of the three items that needed to be addressed by the trial court on remand, our disposition in the *2022 Opinion* described a limited remand with specific directions for the trial court:

"This matter is remanded to the trial court for the following proceedings: First, with respect to the equalization payment that Candy would have owed to Terence prior to the imposition of [Family Code] section 271 sanctions, the trial court shall resolve an inconsistency between (a) the mathematical sum of the specific individual monetary amounts identified throughout the [2020] Statement of Decision as credits to either party, and (b) the total amount of $19,016.30 identified as the equalization payment that Candy would have otherwise owed to Terence. In so doing, the trial court shall (1) confirm that it has included a

6

credit of $31,636.40 reflecting Terence's payment of community debt; (2) correct any errors that it discovers with respect to the figures set forth in the [2020] Statement of Decision; and (3) amend the judgment accordingly. Second, the trial court shall rule on Terence's request for reimbursement of the auto insurance premiums he paid for Candy. Third, the trial court shall decide whether to exercise its discretion to make an express order terminating jurisdiction over spousal support.

"In all other respects, the judgment and the trial court's postjudgment orders are affirmed." (*2022 Opinion, supra,* D078148.)

After remand, the trial court addressed the issues that we specified in the *2022 Opinion* by issuing, on August 29, 2022, an amended judgment after remand. The amended judgment attached and incorporated two documents: (1) a Statement of Decision Regarding Remanded Issues; and (2) an interlineated version of the 2020 Statement of Decision, which deleted the specific Findings and Orders pertaining to the remanded issues and directed the reader, on those issues, to the Statement of Decision Regarding Remanded Issues.

In the Statement of Decision Regarding Remanded issues, the trial court explained that it had committed a *mathematical* error when calculating the reimbursements due to each party. The trial court explained that "[t]o ensure that [a mathematical error] does not occur again" it would "list[ ] each reimbursement each party was ordered to pay with a citation to the [2020] [S]tatement of [D]ecision where it was ordered." The trial court then set forth a table showing each individual reimbursement amount, with a citation to the page on which that reimbursement was identified in the 2020 Statement of Decision. The trial court did not undertake to revisit or revise any of the individual reimbursement amounts set forth in the 2020 Statement of Decision. The trial court concluded, "Subtracting the total

7

reimbursements [Terence] owes from the total reimbursements [Candy] owes ($212,308.05-$195,844.47), leaves [Candy] owing an equalization payment of $16,535.58," rather than the equalization payment of $19,016.30 that was erroneously calculated in the 2020 Statement of Decision.  The amended judgment, therefore, required that Terence pay $20,964.42 directly to Candy's attorney (at the rate of $250 per month), rather than the amount of $18,483.70 specified in the 2020 Statement of Decision.

After the trial court issued the amended judgment, Terence filed both a motion for a new trial (Code Civ. Proc., § 657) and a motion to set aside and vacate the judgment (*id*., § 663) (the postjudgment motions).  The postjudgment motions sought relief with respect two specific reimbursement items identified in the 2020 Statement of Decision.

Specifically, on page 21 of the 2020 Statement of Decision, the trial court stated, "The Court awards $2993.59 to [Terence] for payments made towards the mortgage and insurance [for the El Cajon house] after separation.  These amounts are reduced by the $11,814.10 that [Candy] deposited into the joint checking account during this time period."  Terence argued in the postjudgment motions that instead of $2,993.59, he should have been awarded $4,085.52 because he was entitled to the full amount of the earthquake and homeowner's insurance payments, not just half.  Terence also argued that instead of crediting Candy for the $11,814.10 she deposited into the joint checking account, Candy should have been credited only $128.68 because she allegedly withdrew or spent most of the funds.  Terence lodged numerous exhibits, upon which he proposed to rely to prove that the trial court should enter a different judgment.

The trial court denied the postjudgment motions at a hearing held on November 9, 2022.  In explaining the denial, the trial court stated,

8

"[Terence's] requests, if I were to grant them, would be in excess of what the Court of Appeal[ ] gave me the power to do. . . . I believe to grant the motions would be in excess of the authority that I have in this case." The trial court explained, "It was a very limited subset of issues that the Court of Appeal sent down . . . . They did not direct me to revisit the findings about what equalizations were made or what equalizations were owed. They directed this court to correct mathematical errors based on what was in the [2020] [S]tatement of [D]ecision. . . . That is the extent of the power they gave to [this Court]. They said further proceedings, not new trial. If the Court of Appeal had wanted there to be a new trial where the Court would consider new evidence, where the Court would allow new evidence to be presented, they would have said remanded for a new trial. They did not."

Following the November 9, 2022 hearing, the trial court issued a minute order denying the postjudgment motions. The minute order included a checked box on the form, which stated, "Resp [Respondent, i.e., Terence] referred to the FLF [family law facilitator] for preparation of FOAH [a formal order after hearing] . . . and FLF to prepare and submit directly to the court." (Capitalization omitted.) No formal order after hearing appears in the appellate record, and there is no indication in the register of actions that any such order was prepared.

On December 8, 2022, Terence filed a notice of appeal from both the amended judgment and from the order denying the postjudgment motions.[2]

_____

[2] Candy did not file a respondent's brief and has not appeared in connection with this appeal.

9

## II.

## DISCUSSION

A. *Despite the Absence of a Formal Order After Hearing, We Will Consider the Appeal from the Motion to Vacate the Judgment*

Before considering the merits of Terence's appeal, we must first address the preliminary issue of appealability with respect to the trial court's denial of the motion to vacate the judgment.

Terence's postjudgment motions sought a new trial and an order setting aside and vacating the judgment. Case law provides that a ruling denying either type of motion may be reviewed on appeal. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19 (*Walker*) [ruling denying a motion for a new trial]; *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 135 [ruling denying a motion to vacate a judgment].) More specifically, a ruling denying a motion for a new trial may be reviewed as part of the appeal from the judgment (*Walker*, at p. 19), and a ruling denying a motion to vacate a judgment, brought pursuant to Code of Civil Procedure section 663, is independently appealable as an order made after an appealable judgment. (*Ryan*, at pp. 134–135.)

However, a complication arises in this case because of the content of the minute order from the November 9, 2022 hearing, at which the trial court denied both of Terence's postjudgment motions. On its face, that minute order seems to contemplate the preparation of a final order after hearing. Specifically, as we have explained, a box is checked indicating "Resp [Respondent, i.e., Terence] referred to the FLF [family law facilitator] for preparation of FOAH [a formal order after hearing] . . . and FLF to prepare and submit directly to the court." (Capitalization omitted.)

"A minute order that directs the preparation of a formal written order is not itself appealable." (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 101.)

10

"[W]hen the trial court's minute order expressly indicates that a written order will be filed, only the written order is the effective order." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1170.) Based on those legal principles, we issued an order on March 27, 2023, observing that "the portion of the November 9, 2022 minute order that denies [Terence's] motion to vacate the judgment is premature."[3] We directed Terence to either submit a copy of a final order after hearing or, in the alternative, to submit a letter addressing why his appeal from the November 9, 2022 minute order denying his motion to vacate the judgment should not be dismissed as being from a nonappealable, interlocutory order.

In response, Terence did not submit a final order after hearing. He did, however, submit extensive briefing addressing why we should consider his appeal of the trial court's ruling denying the motion to vacate the judgment. After receiving Terence's briefing, we issued an order stating that the appeal would proceed and that the parties should address, in their appellate briefs, whether the trial court's November 9, 2022 minute order denying the motion to vacate was a final appealable order.

Having reviewed Terence's briefing, we have determined that, in the interest of justice, we will construe the trial court's minute order from the November 9, 2022 hearing as the final appealable order denying the motion to vacate the judgment. Significantly, at the November 9, 2022 hearing, the trial court did not state on the record that Terence was referred to the family law facilitator for the preparation of a formal order after hearing. In fact, at

---

3      Because a ruling denying a motion for a new trial need not be independently appealable to be reviewed on appeal as part of the appeal from the judgment (*Walker*, *supra*, 35 Cal.4th at p. 19), we did not identify any problem with the prematurity of Terence's appellate challenge to the ruling denying the motion for a new trial.

11

the conclusion of the hearing, Candy specifically asked, "How do we move forward now?  Do we just follow the order or what -- what do we do next?"  The trial court responded that "there is a time frame for appeal from this type of motion. . . . [T]here is an entitlement to an appeal."  The trial court made no mention of any requirement of a formal order after hearing to perfect the ability to appeal.  "An oral ruling controls where there is a conflict with a minute order." (*Hatley v. Southard* (2023) 94 Cal.App.5th 579, 588, fn. 1.)  Because the trial court made no mention at the hearing that Terence was required to apply to the family law facilitator for the preparation of a formal order after hearing, the trial court's statements at the hearing control over any box that was subsequently checked on the minute order.

Further, Terence states, under penalty of perjury, that he was not served with the minute order for the November 9, 2022 hearing.  Consistent with that representation, the superior court's register of actions, as reproduced in the appellate record, does not reflect any clerk's certificate of service for the minute order for the November 9, 2022 hearing.  Therefore, it appears that Terence was never given any notice that he was required to apply to the family law facilitator for the preparation of a formal order after hearing.

In light of the lack of any communication to Terence, either on the record at the November 9, 2022 hearing or by service of the minute order, that he should seek the preparation of a formal order after hearing, we will treat the minute order from the November 9, 2022 hearing as the final order denying the motion to set aside and vacate the judgment.  Terence has properly appealed from that order.

B.    *The Appeal from the Amended Judgment and the Appeal from the Order Denying the Postjudgment Motions Lack Merit*

Turning to the merits, we are presented with both (1) an appeal from the amended judgment, and (2) an appeal from the ruling denying the postjudgment motions.  We address each in turn.

1.    *The Appeal from the Amended Judgment*

In his appeal from the amended judgment, Terence challenges the same pair of reimbursement items from the 2020 Statement of Decision that he detailed in the postjudgment motions following the amended judgment. Specifically, as we have explained, the 2020 Statement of Decision states that "[t]he Court awards $2993.59 to [Terence] for payments made towards the mortgage and insurance of [the El Cajon house] after separation.  These amounts are reduced by the $11,814.10 that [Candy] deposited into the joint checking account during this time period."  In challenging the amended judgment, Terence argues that "he should have been credited with all of the homeowners and earthquake insurance expenses" after Candy moved to the El Cajon house, which would result in him being awarded an additional $1,091.92.  He further argues that because the trial court, in the 2020 Statement of Decision, awarded Candy half of Terence's pension retroactive to the date of separation, the trial court should not have *additionally* credited Candy for her post-separation deposits to the joint bank accounts.  According to Terence, Candy has received a "double payment."

Terence's arguments rest exclusively on a challenge to the rulings that the trial court made in the 2020 Statement of Decision.  Specifically, he believes the 2020 Statement of Decision should have credited him with $4,085.52 instead of $2,993.59, and he believes that Candy should not have received a credit for most of funds that she deposited in the joint bank

13

accounts after separation. Nothing precluded Terence from raising those arguments in his prior appeal. It appears that he simply failed to do so.

Where a party "could have raised an issue in a prior appeal, the appellate court need not entertain the issue in a subsequent appeal absent a showing of justification for the delay." (*People v. Senior* (1995) 33 Cal.App.4th 531, 538 [concluding that a defendant waives an issue by not raising it in an earlier appeal if "(1) the issue was ripe for decision by the appellate court at the time of the previous appeal; (2) there has been no significant change in the underlying facts or applicable law; and (3) the defendant has offered no reasonable justification for the delay"].) "Waiver precludes successive appeals based on issues ripe for consideration in the prior appeal and not brought in that proceeding." (*People v. Jordan* (2018) 21 Cal.App.5th 1136, 1143.) We perceive no justification for Terence's delay in raising the challenges to the 2020 Statement of Decision that he now identifies in his appeal from the amended judgment.[4] We accordingly need not, and do not, entertain the issues that Terence should have raised in his prior appeal.

_____

[4] At oral argument, Terence attempted to justify his failure to earlier raise the two issues, stating that he viewed the 2020 Statement of Decision on those issue as having been "unclear." That justification fails because the trial court's ruling with respect to the two issues has not been clarified in any manner since the 2020 Statement of Decision. Neither the Statement of Decision Regarding Remanded Issues nor the interlineated version of the 2020 Statement of Decision contain any further clarification on the issues that Terence now challenges. Thus, any challenge that Terence is currently asserting he could have asserted in his earlier appeal. At oral argument, Terence also explained that his prior appeal was focused on "broader issues." That attempted justification is also unavailing. Terence may have chosen to focus on broader issues in his prior appeal, but nothing precluded him from also raising additional specific challenges.

Further, "[i]n an appeal following a limited remand, the scope of the issues before the [appellate] court is determined by the remand order." (*People v. Murphy* (2001) 88 Cal.App.4th 392, 396–397.) Our remand order in the *2022 Opinion* was limited in scope. Regarding the equalization payment that Candy owed to Terence (prior to the sanctions she was awarded), we remanded for the trial court to perform the very limited task of explaining why the individual credits identified in the 2020 Statement of Decision, when totaled, did not match the amount of $19,016.30. (*2022 Opinion, supra,* D078148.) We authorized the trial court to investigate the reason for the discrepancy and to make any corrections to the judgment that were needed when it determined the cause of the discrepancy. (*Ibid.*) We did not authorize the trial court to entertain any further argument by the parties challenging the individual reimbursement amounts that are set forth throughout the 2020 Statement of Decision. As all of the issues that Terence raises in the appeal from the amended judgment exceed the scope of our remand in the *2022 Opinion*, those issues are not cognizable in this appeal.

> 2.      *The Appeal from the Order Denying the Postjudgment Motions*

Turning to Terence's appeal from the order denying the postjudgment motions, the trial court denied those motions based on its conclusion that it did not have the authority, on remand, to grant the relief that Terence sought. Terence contends that the trial court erred in reaching that conclusion.

"A 'trial court's jurisdiction on remand extends only to those issues on which the reviewing court *permits* further proceedings.' " (*Sanchez v. Martinez* (2020) 54 Cal.App.5th 535, 550.) "[T]he rule requiring a trial court to follow the terms of the remittitur is jurisdictional in nature. [Citations.] The issues the trial court may address in the remand proceedings are

15

therefore limited to those specified in the reviewing court's directions, and if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so." (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859–860.) "The trial court may not expand the issues on remand to encompass matters outside the scope of the remittitur merely because the reviewing court has not expressly forbidden the trial court from doing so." (*Id*. at p. 863.) "The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void." (*Hampton v. Superior Court in and for Los Angeles County* (1952) 38 Cal.2d 652, 655.)

Here, as we have explained, the scope of the remand specified in the *2022 Opinion* was limited. With respect to the equalization payment owed by Candy, we authorized the trial court to investigate the source of the discrepancy appearing in the 2020 Statement of Decision. Once the trial court located the source of the discrepancy, we authorized the trial court to do no more than to resolve the discrepancy by issuing an amended judgment.

Terence argues that the relief he sought in his postjudgment motions fell within the scope of this limited remand because "he sought to resolve any internal inconsistencies and correct any math errors in the trial court's amended judgment after remand." We reject Terence's argument. The alleged "internal inconsistencies" and "math errors" that Terence described in his postjudgment motions are completely unrelated to the inconsistent amounts and possible mathematical error that we identified in the *2022 Opinion*. Specifically, in his postjudgment motions, Terence challenged the trial court's conclusion that (1) Terence should be credited for only half of the insurance premiums he paid for the El Cajon house after separation, and

16

(2) Candy should be reimbursed for the amounts she deposited in the joint bank accounts after separation.  In contrast, we remanded only for the trial court to examine why the sum of the credits in the 2020 Statement of Decision was inconsistent with the amount of $19,016.30.  (*2022 Opinion, supra,* D078148.)  Accordingly, the trial court properly denied Terence's postjudgment motions on the ground that the relief Terence sought was beyond its authority on remand.

DISPOSITION

The judgment and the trial court's order denying the postjudgment motions are affirmed.


IRION, J.

WE CONCUR:



HUFFMAN, Acting P. J.



DATO, J.